(No. 48051.

WESTINGHOUSE ELECTRIC COMPANY, Appellee, v.
THE INDUSTRIAL COMMISSION *et al.*—(William
Lloyd Craddock, Appellant.)

*Opinion filed October 1, 1976.*

Michael J. Costello, of Springfield, for appellant.

Sorling, Northrup, Hanna, Cullen and Cochran, of Springfield (Patrick V. Reilly, of counsel), for appellee.

MR. JUSTICE CREBS delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon County which reversed an award of compensation made to the claimant pursuant to the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). The arbitrator determined that the claimant had sustained the permanent loss of the use of 15% of his right leg, that the loss was the result of an accidental injury arising out of and in the course of the claimant's employment and that the claimant was entitled to the sum of $2,265 pursuant to section 8(e) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(e)). The Industrial Commis-

sion affirmed the decision of the arbitrator, and the circuit court subsequently reversed the Industrial Commission. The court found that no evidence supported the finding that the claimant's injury was permanent or the finding that there was a causal connection between the claimant's accident and the alleged permanent loss of use of the right leg. The claimant has appealed to this court pursuant to Supreme Court Rule 302(a). Ill. Rev. Stat. 1973, ch. 110A, par. 302(a).

Prior to the hearing before the arbitrator on September 3, 1974, the parties stipulated that on April 23, 1972, the claimant was employed by the appellee, Westinghouse Electric Company, and that the claimant sustained accidental injuries on that date. It was further stipulated that the appellee was operating under the provisions of the Workmen's Compensation Act. The parties also stipulated as to the claimant's earnings during the year preceding the injury.

The claimant was the sole witness to testify at the hearing before the arbitrator. He stated that he had been employed as a plumber by the appellee and that he was injured on April 23, 1972, while performing work for the appellee. The accident occurred as the claimant was disassembling scaffolding in the appellee's plant. As two men were handing boards down to the claimant from an elevated position, several boards slipped and struck the claimant in the area of his left hip. The claimant suffered intense pain after the accident and was unable to move. He was then taken to a hospital where he remained for two days. The claimant testified that he suffered severe pain in the upper part of his right hip for about three months after the accident. The claimant also felt the pain in his right leg on two or three occasions shortly after the accident of April 23, 1972. The claimant further testified that he experiences pain in his back whenever he attempts to bend and that, while he did suffer from backaches prior to April 23, 1972, his back pains have been more extreme since

that date. The claimant also stated that, since his duties as a plumber required heavy lifting, he feels that he is no longer capable of working as a plumber.

The claimant admitted that he had suffered a prior injury to his lower back about two years before the accident of April 23, 1972. The prior injury occurred when the claimant lifted a heavy object while working as a plumber. The claimant suffered back discomfort for about three weeks after the accident, and he was treated by both a chiropractor and a medical doctor. Despite the medical treatment that he received, the claimant continued to suffer from backaches after the accident. The claimant testified, however, that he was able to continue working full time as a plumber after his original back injury.

The claimant further testified that he reported for work three days after the accident of April 23, 1972. He did not actually work at that time, however, because the plumber's union had sent another plumber to the job site to replace the claimant. The claimant did not work again until about six or seven months after the accident. At that time he worked for four days as a plumber in Phoenix, Arizona. The claimant quit the job in Phoenix because he was physically unable to perform the required work. After attempting to work in Phoenix, the claimant was in such pain that he was bedridden for two and one-half weeks after he quit the job. The claimant has not worked as a plumber since he left the job in Phoenix. He did obtain other employment in August, 1973, and he has continued in that employment.

The only other evidence presented to the arbitrator was the evidence deposition of Dr. John Meyer, which was admitted into evidence by stipulation of the parties. Dr. Meyer testified that he is a surgeon and that he examined and treated the claimant on April 23, 1972, at Memorial Hospital in Springfield, Illinois. Dr. Meyer stated that the claimant complained of severe pain in the right sacroiliac joint and was admitted to the hospital. The doctor took X

rays of the claimant's back, and they proved negative for bony changes. The claimant told Dr. Meyer that he had injured his back while lifting something about two and one-half years earlier and that he had suffered pain in the area of his right sacroiliac joint since that accident. Dr. Meyer diagnosed the claimant's condition as acute recurring sacroiliac strain. The doctor further testified that his patient responded fairly well to medication and physical therapy and was discharged from the hospital after two days. The doctor found no damage to nerves or muscles which would impair the use of the claimant's legs. Dr. Meyer responded negatively when asked whether he found any permanent injury to the claimant resulting from the accident of April 23, 1972. He described the claimant's back problem as chronic and stated that the pains could recur over and over in spite of good medical treatment.

Dr. Meyer testified that the claimant left the hospital on April 25, 1972, and that he, Dr. Meyer, next saw the claimant in July, 1972. The claimant came to the doctor's office in July, 1972, and complained that he was suffering from soreness in his back. Dr. Meyer observed at that time that the claimant had a good range of motion and could bend and touch the floor. Dr. Meyer next saw the claimant in September, 1972, after the claimant had returned from Phoenix. The claimant reported to Dr. Meyer at that time that he could not perform the work required of him in Phoenix and that he was again suffering from backaches. The doctor also saw the claimant in March, 1973, at which time the claimant again complained of back pains. Dr. Meyer expressed his opinion that the claimant's injury of April 23, 1972, is just one of several episodes of back pain that the claimant would experience. He stated that the pain could occur almost any time the claimant contorted his back in an attempt to lift something. The doctor testified that the claimant's chronic back condition is a condition that will probably exist for the rest of the claimant's life. Dr. Meyer also testified that it was

impossible to determine whether the accident of April 23, 1972, was the cause of some of the pain subsequently suffered by the claimant. He stated that some of the pain could be the result of that accident.

The claimant gave additional testimony at the hearing before the Industrial Commission on November 12, 1974. He testified that he has suffered back pains subsequent to the hearing before the arbitrator and that the pains occasionally extend into his right leg.

The appellee contends that the claimant's physical disability was a condition existing prior to April 23, 1972, which had no causal relation to the accident on that date. The claimant maintains that the accident of April 23, 1972, aggravated a preexisting physical condition and was a causative factor of his disability.

The claimant did have the burden to prove that his employment was a causative factor of his physical disability. He did not have to prove, however, that his employment was the sole causative factor or even that it was the principal causative factor. (*Johns-Manville Corp. v. Industrial Com.*, 60 Ill. 2d 221.) The aggravation of a preexisting condition may be an accidental injury and compensable under the Workmen's Compensation Act so long as the occurrence is traceable to a definite time, place and cause. *International Harvester Co. v. Industrial Com.*, 56 Ill. 2d 84.

In *Chicago Park District v. Industrial Com.*, 36 Ill. 2d 212, the claimant was awarded compensation for an injury to his back and leg even though he had experienced back and leg troubles at intervals over a substantial period of time. This court affirmed the award of compensation even though we recognized the possibility that the claimant's disability was the result of natural degenerative changes unaffected by his employment. We held that a claimant may receive compensation for an injury which aggravates a preexisting condition and stressed that it is for the trier of fact to determine whether a preexisting condition had

been aggravated. See also *Gubser v. Industrial Com.*, 42 Ill. 2d 559.

In the instant case, the occurrence is traceable to a definite time, place and cause. It is undisputed that the claimant sustained a blow to his hip on April 23, 1972, while he was working for the appellee. Dr. Meyer diagnosed the claimant's condition as acute recurring sacroiliac strain and stated his opinion that the condition existed prior to April 23, 1972. It is true, as the appellee contends, that there is no medical testimony that the accident of April 23, 1972, either caused or aggravated the claimant's physical condition. Nor is there any medical testimony, however, that the accident did not aggravate the claimant's condition. Dr. Meyer testified that he could not determine whether the claimant's pain was partially due to the accident of April 23, 1972. He also testified that the accident could be the cause of some of the claimant's subsequent pain. Dr. Meyer gave no opinion as to whether the accident affected the claimant's ability to work. Medical testimony is not necessarily required, however, to establish causation and disability. (*Union Starch & Refining Co. v. Industrial Com.*, 37 Ill. 2d 139.) The claimant did give testimony which, if believed by the Industrial Commission, tends to establish that the accident in question did aggravate the claimant's physical condition. The claimant testified that he had worked full time as a plumber since November, 1966. He continued to work full time as a plumber after his original back injury, which occurred about two years prior to the accident of April 23, 1972. His inability to work commenced immediately after April 23, 1972. The claimant testified that he has been unable to work as a plumber since that date. We have held that proof of an employee's state of health prior to the time of injury and the change immediately following the injury and continuing thereafter is competent as tending to establish that the impaired condition was due to the

injury. *Union Starch & Refining Co. v. Industrial Com.*, 37 Ill. 2d 139.

The determination of disputed questions of fact in workmen's compensation cases is primarily a function of the Industrial Commission. (*Dixon v. Industrial Com.*, 60 Ill. 2d 126.) A trial court may set aside a decision of the Industrial Commission, therefore, only if it determines that the decision is against the manifest weight of the evidence. (*County of Cook v. Industrial Com.*, 57 Ill. 2d 24.) We find that the Industrial Commission could have determined from the claimant's testimony that there was a causal connection between his physical disability and the accident of April 23, 1972. Furthermore, considering the testimony relating to the claimant's inability to return to work as a plumber, the recurrence of his pain, and the likelihood that this condition will last for the rest of the claimant's life, we also find sufficient evidence in the record from which the Commission could have concluded that the claimant's disability was permanent. See *Gould v. Industrial Com.*, 40 Ill. 2d 548.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is reversed, and the decision of the Industrial Commission awarding compensation to the claimant for permanent loss of use of 15% of his right leg is reinstated.

*Judgment reversed; award reinstated.*