ELECTRO-MOTIVE DIVISION, GENERAL MOTORS CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Charles Johnson, Appellee).

First District (Industrial Commission Division)   No. 1—91—3639WC

Opinion filed December 11, 1992.

Nyhan, Pfister, Bambrick & Kinzie, P.C., of Chicago (Julia A. Donnelly and Harry E. Kinzie III, of counsel), for appellant.

Gaines & Gaines, of Chicago (Lewis P. Gaines, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellee, Charles Johnson (the claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) contending he sustained injuries to his left knee and leg in the course of his employment with the appellant, the Electro-Motive Division of the General Motors Corporation (the employer). The arbitrator found the claimant was totally and permanently disabled and awarded benefits. The Industrial Commission (Commission) affirmed. The circuit court reversed and remanded, finding the claimant had failed to carry his burden of proving he was totally and permanently disabled.

Pursuant to the order of the circuit court, the Commission reviewed the entire record and found the claimant was temporarily totally disabled for a period of $17\frac{1}{7}$ weeks. In addition, the Commission compensated the claimant for the permanent loss of $66\frac{2}{3}\%$ of the use of his right leg and 30% of the use of his left leg. On review, the circuit court again reversed and remanded, ordering the Commission to reinstate its original decision. On remand, the Commission reinstated the original decision. Subsequently, the circuit court confirmed and the employer now appeals.

The claimant worked as a welder for the employer from 1974 until September of 1981. He testified that around 11:30 p.m. on November 21, 1979, he was working on the assembly of a locomotive. As he ascended the steps of the locomotive he struck his left knee. He immediately experienced pain and some swelling in the knee. (The application for adjustment of claim and the request for hearing lists November 20, 1979, as the date of the accident. The arbitrator found November 20, 1979, was the date of the accident.)

The claimant testified he came down from the locomotive and told his foreman, John Wehr, of the incident. He then went to the company nurse and told her of the incident. The records of the company's medical clinic indicate the claimant was seen on November 20, 1979, concerning a preexisting condition in the right knee. There is no mention of an incident involving the left knee in the November 20, 1979, entry, nor is there a record of a visit to the clinic on November 21, 1979. The clinic's records indicate the claimant was seen on November 27, 1979; however, no mention was made of a problem with the left knee or of an incident involving the left knee.

On November 30, 1979, the claimant went to the clinic with a complaint concerning the left knee. The records state the claimant claimed he bumped the knee on a "car" a few days before. He re-

ceived an infrared treatment and an Ace wrap. He continued to receive treatment for the left knee during December of 1979 and January of 1980. The clinic's records of February 6, 1980, show the claimant complained of pain in both knees. The claimant continued to receive treatment through the spring of 1980.

In May of 1980, the claimant was sent to Dr. Richard Blecha. The claimant described the November incident to Blecha. The claimant told Blecha that at the time of the incident he experienced pain and swelling; however, he felt it was relatively minor. The problem seemed to clear up within a week or two. The claimant told Blecha that since the incident he had been experiencing intermittent pain and swelling in the left knee. Blecha diagnosed a possible torn medial meniscus. Anti-inflammatory medication was prescribed.

Blecha examined the claimant twice in June of 1980. On July 21, 1980, Blecha performed an arthrotomy with a medial meniscectomy on the left knee. Subsequently, the claimant received therapy and returned to work on September 6, 1980. An examination on September 24, 1980, again showed complaints of pain in both knees. The claimant continued to have problems with his knees. The claimant has not worked since he left his employment with the employer on September 11, 1981.

The record shows the claimant had a long history of problems with his right knee arising out of a high school football injury in 1955. Surgery was performed on the right knee in 1969. The claimant had an arthroscopy on the right knee in September of 1979, and did not return to work until November 19, 1979. He testified the injury to his left knee occurred two days later.

The record also shows the claimant was injured in an auto collision on March 28, 1979. Medical records state the claimant received injuries to both knees in the collision. In answering interrogatories on December 27, 1979, the claimant denied sustaining any personal injuries since the auto collision in March. This was five weeks after the alleged incident at work.

When asked about what he noticed when walking, the claimant testified that the swollen left knee forced him to put pressure on the right knee which caused it to swell. According to the claimant, this caused the problem with his right knee to reappear.

At arbitration, the claimant offered the deposition testimony of Dr. Irwin T. Barnett. Barnett examined the claimant on June 6, 1981. Barnett opined the claimant's condition was permanent and that there was a causal connection between the claimant's injury on November 21, 1979, and the condition of ill-being in both knees. Barnett opined

that the claimant favored his left leg by shifting his weight to the right leg. Given the degenerative condition of the right knee, this added stress and strain aggravated or increased the "discomfort" in the right knee.

The employer offered the written opinion of Dr. E. Thomas Marquardt. Marquardt examined the claimant on February 14, 1983. He found a minor impairment of the left leg. He found the claimant's major problem was the right knee. Marquardt was of the opinion the claimant was unemployable as a result of the condition of the right knee. He opined that if it were not for the condition of the right knee, the claimant could return to full work activity. The parties stipulated that if Marquardt testified he would opine the condition of claimant's right knee was not related to the November 20, 1979, incident.

The arbitrator found the claimant had sustained accidental injuries on November 20, 1979, arising out of and in the course of his employment. The arbitrator found there was a causal connection between the condition of ill-being in the right knee and the injury of November 20, 1979. The arbitrator determined this condition was caused by the claimant favoring his left leg. The arbitrator held the claimant's injuries rendered him totally and permanently disabled, and awarded him $238.40 per week for life under section 8(f) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)).

The employer appealed to the Commission, which took some additional evidence. On July 9, 1986, the Commission affirmed with one member dissenting. The Commission observed the claimant had swollen knees and walked with a limp on the right. The Commission found the arbitrator's findings were supported by the record.

On review, the circuit court held the findings of an accidental injury and a causal connection were not against the manifest weight of the evidence. However, the circuit court held that the finding that the claimant was totally and permanently disabled was against the manifest weight of the evidence. The circuit court opined the claimant failed to satisfy his burden of showing the unavailability of work for a person in his circumstances. The circuit court reversed the decision of the Commission and remanded with instructions to enter an award in conformity with its order and memorandum.

On remand, the Commission awarded the claimant temporary total disability for a period of 17½/7 weeks. The Commission compensated the claimant for the permanent loss of 66⅔% of the use of his right leg and 30% of the use of his left leg.

On July 18, 1990, the circuit court again reversed and remanded the decision of the Commission. The court ordered the Commission to

reinstate the Commission's original decision. The circuit court found it had erred in its earlier decision by imposing a greater burden on the claimant then the law required. The court found the medical evidence established that the claimant was permanently and totally disabled. However, the court stated the Commission's decision on remand "should provide and explicitly state that its determination of permanent total disability took into consideration the claimant's employment potential with reference to his age, training, education and experience."

On remand, the Commission reinstated the original award. The Commission noted there was no evidence in the record of employment or vocational rehabilitation potential. The circuit court confirmed and the employer now brings the instant appeal.

On appeal, the employer contends the finding of an accidental injury on November 20, 1979, was against the manifest weight of the evidence. The employer cites the interrogatories of December 27, 1979, wherein the claimant denied sustaining any injuries since an auto collision in March of 1979. The employer also points to the clinic's medical records which do not show any report of an injury to the left knee until November 30, 1979.

■ Whether the claimant's injuries were a result of a work-related accident arising out of and in the course of his employment is a factual determination within the province of the Commission. (*General Motors Corp., Central Foundry Division v. Industrial Comm'n* (1989), 179 Ill. App. 3d 683, 534 N.E.2d 922.) It is for the Commission to draw reasonable inferences and conclusions from the competent evidence. (*General Electric Co. v. Industrial Comm'n* (1984), 129 Ill. App. 3d 352, 472 N.E.2d 486.) The Commission's determination that an accident arose out of and in the course of employment will not be overturned unless it is against the manifest weight of the evidence. *Elliot v. Industrial Comm'n* (1987), 153 Ill. App. 3d 238, 505 N.E.2d 1062.

■ In the instant case, the claimant testified to striking his left knee while climbing stairs on a locomotive at work. He reported the incident to his foreman, John Wehr, within 10 to 15 minutes after the injury. Wehr was not called to rebut the claimant's testimony. The records of the company's clinic dated November 30, 1979, show the claimant reported injuring his left knee a few days earlier. Hospital and other medical records reflect the claimant's continuing claim to an incident at work in November of 1979. On the other hand, the interrogatories signed in an unrelated action five weeks after the al-

leged incident deny any personal injury between March of 1979 and December of 1979.

The evidence regarding an accidental injury on November 20, 1979, was to some extent conflicting and less than clear. However, there was sufficient evidence to support the Commission's finding of an accidental injury on that date, and therefore the Commission's decision on this issue is not against the manifest weight of the evidence.

The employer also contends the finding of a causal connection between the claimant's injury and his condition of ill-being is based solely on the speculation of Dr. Barnett. The employer argues that Barnett's opinion has no factual support in the record.

■ It is the responsibility of the Commission to determine whether a causal relationship existed between the claimant's injuries and the claimed industrial accident. (*Steiner v. Industrial Comm'n* (1984), 101 Ill. 2d 257, 461 N.E.2d 1363.) Whether a claimant's disability is attributable to a degenerative condition or, because of an accident, to an aggravation or acceleration of a preexisting condition is a question of fact to be decided by the Commission. (*Board of Education v. Industrial Comm'n* (1983), 96 Ill. 2d 239, 449 N.E.2d 839.) If an injury is a contributing factor, compensation will be allowed even if natural degenerative changes or other factors contribute to the claimant's disability. (*Azzarelli Construction Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 262, 418 N.E.2d 722.) It is the Commission's function to resolve disputed questions of fact and evidentiary conflicts, and the Commission's findings must be upheld unless contrary to the manifest weight of the evidence. *Spector Freight System, Inc. v. Industrial Comm'n* (1983), 93 Ill. 2d 507, 445 N.E.2d 280.

■ In the instant case, the claimant testified, "By walking on the left knee, swollen, it forced me to pressure the right knee, which caused it to swell more, because it was weaker than the left knee, and it created a problem on the right leg again." Three months after this testimony, Dr. Barnett opined in his deposition that in favoring his left leg and shifting his weight to his right leg, the claimant aggravated the degenerative condition of the right knee. The medical experts agreed the condition of the right knee rendered the claimant totally disabled. They disagreed on the causal connection between the injury to the left knee and the condition of the right knee.

It was within the province of the Commission to resolve the conflicting medical evidence related to the issue of causal connection. The Commission accepted the opinion of Dr. Barnett and that decision is not contrary to the manifest weight of the evidence.

The employer contends the claimant failed to produce evidence sufficient to support a finding of total and permanent disability. The employer argues medical evidence alone is not sufficient and that the claimant must present evidence such as age, training, education and work experience.

■ If the claimant's disability is limited in nature so that he is not obviously unemployable, *or if there is no medical evidence to support a claim of total disability*, the burden is upon the claimant to establish the unavailability of employment for a person in his circumstances. (*Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159.) Once the claimant presents medical evidence of his total disability, the burden shifts to the employer to present evidence that some kind of work is regularly and continuously available to such person. See *Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 447 N.E.2d 842; *Rowe Construction Co. v. Industrial Comm'n* (1984), 128 Ill. App. 3d 365, 470 N.E.2d 1196.

■ The medical experts agreed the condition of the claimant's right knee rendered him totally and permanently disabled. The Commission found a causal connection between the claimant's injury and his condition of ill-being. Thus the claimant presented medical evidence of his total and permanent disability and the burden shifted to the employer to show the claimant's employability. In the cases relied on by the employer, none of the medical experts opined the claimant was totally and permanently disabled. In those cases, the claimant was required to present additional evidence to show that no reasonably stable labor market existed for a person in his or her circumstances. The instant case is not such an "odd-lot" situation.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and H. LEWIS, JJ., concur.